IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH WATSON, | ) | |
| | ) | Civil Action No. 09 - 87J |
| Plaintiff, | ) | |
| | ) | Judge Kim R. Gibson |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| JEFFREY BEARD, Sec. Camp Hill, PA; | ) | |
| GERALD ROZUM, Supt. Somerset, PA; | ) | |
| GIBSON, Deputy Superintendent; PAUL | ) | |
| FISHER, Former Kitchen Food Service | ) | |
| Manager; REAM, Kitchen Supervisor; | ) | |
| PASUKA, Captain; CLASS, Major; | ) | |
| SNYDER, Security Lieutenant; DUPONT, | ) | |
| Hearing Examiner; JECHONECH; | ) | |
| VERNEAU, Kitchen cook; PRATTS, | ) | |
| Correction Security Officer; TROY, | ) | |
| Correction Security Officer | ) | |
| | ) | |
| Defendants. | | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

I.         **RECOMMENDATION**

It is respectfully recommended that the Motion to Dismiss filed by the

Commonwealth Defendants (doc. no. 25) be granted and that the Motion to Dismiss filed by

Defendant Fisher (doc. no. 45) be granted.

II.         **REPORT**

Plaintiff, Joseph Watson, a *pro se* prisoner currently in the custody of the

Pennsylvania Department of Corrections (DOC) in the State Correctional Institution at Somerset

(SCI-Somerset), has brought the instant action pursuant to the Civil Rights Act, 42 U.S.C. § 1983,

alleging violations of his rights as protected by the First, Fourth, Eighth, and Fourteenth

Amendments of the United States Constitution.  Defendants have filed motions to dismiss Plaintiff's claims under Fed. R. Civ. P. 12(b)(6).  For the reasons stated below, the motions should be granted.

A. <u>Standard of Review - Motion to Dismiss Under Rule 12(b)(6)</u>

A complaint must be dismissed pursuant to Fed. R. Civ. P. 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atlantic Corp. v.Twombly</u>, 550 U.S. 554, 556 (2007)(rejecting the traditional 12 (b)(6) standard set forth in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)).  The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff.  <u>Angelastro v. Prudential-Bache Securities, Inc.</u>, 764 F.2d 939, 944 (3d Cir. 1985).  The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint.  <i>See</i> <u>California Pub. Employee Ret. Sys. v. The Chubb Corp.</u>, 394 F.3d 126, 143 (3d Cir. 2004) (citing <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997)).  Nor must the court accept legal conclusions set forth as factual allegations.  <u>Bell Atlantic Corp.</u>, 550 U.S. at 555 (citing <u>Papasan v. Allain</u>, 478 U.S.  265, 286 (1986)).  "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Bell Atlantic Corp.</u>, 550 U.S. at 555.  Additionally, "a civil rights claim 'must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983." ' <u>Coronado v. Goord</u>, No. 99 Civ. 1674, 2000 WL 1372834, at *2 (S.D.N.Y. 2000) (quoting <u>Alfaro Motors, Inc. v. Ward</u>, 814 F.2d 883, 887 (2d Cir. 1987)).

Courts consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss.  <u>Pension Benefit Guar. v. White Consol. Indus., Inc.</u>,

998 F.2d 1192, 1196 (3d Cir. 1993).  In addition, factual allegations within documents described or identified in the complaint may be considered if the plaintiff's claims are based upon those documents.  *Id*. (citations omitted).  A district court may consider these documents, as well as indisputably authentic documents, without converting a motion to dismiss into a motion for summary judgment.  Spruill v. Gillis 372 F.3d 218, 223 (3d Cir.2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).  Finally, a court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney.  Haines v. Kerner, 404 U.S. 519, 520 (1972).

B.  Plaintiff's Allegations

During the relevant time period, Plaintiff was a kitchen worker at SCI-Somerset.  On January 13, 2008, Defendant Verneau conducted a pat search of Plaintiff and found thirty packs of sugar hidden in his hat. On January 18, 2009, Plaintiff filed Grievance No. 214850 alleging that the kitchen staff was conducting unlawful pat searches which constituted harassment and/or sexual harassment.   On January 28, 2008, Defendant Paul Fisher, former Kitchen Food Service Manager, denied this grievance as frivolous.

> I interviewed inmate Watson and CFSI Verneau. Inmate Watson was caught with thirty packs of sugar hidden in his hat; he was issued a misconduct and found guilty.  Inmate Watson also claims he is being harassed by CFSI Verneau.  CFSI Verneau observed inmate Watson hiding the sugar packets in his hat; thus CFSI Verneau performed a pat search to retrieve the sugar.  All staff in food services perform routine and investigative searches.  Based on the facts stated above, I consider this grievance frivolous thus denied.

Doc. No. 25-1, p. 3.

On January 28, 2008, an investigative search of Plaintiff's cell was conducted as a result of a reliable confidential source who informed the security office of a petition being started (doc. no. 25-1, p. 6).  A petition was found in Plaintiff's cell concerning the increased searches in the kitchen.  As a result, Plaintiff was placed in administrative custody (AC) pending investigation and was charged with Misconduct Report No. A860782 alleging three misconducts:  no. 29-engaging in or encouraging unauthorized group activity; no. 32-possession or circulation of a petition; and no. 36-possession of contraband (doc. no. 25-1, p. 6).  Plaintiff's placement in AC was reviewed by the Program Review Committee on January 29, 2008 (doc. no. 25-1, p. 9).  On February 4, 2008, a misconduct hearing was held.  Following the hearing, charge no. 32 was dismissed and Plaintiff was found guilty of no. 29 and no. 36 and sentenced to 60 days of disciplinary custody effective January 29, 2008 (doc. no. 25-1, p. 10).  Plaintiff appealed to the PRC who sustained the decision of the hearing examiner on February 8, 2008 (doc. no. 25-1, p. 13).

On February 5, 2008, plaintiff filed Grievance No. 217079 alleging that Misconduct Report No. A860782 was written against him by Defendant Fisher in retaliation for his complaints about sexual harassment (doc. no. 25-2, p. 15).   This grievance was denied by Deputy Superintendent Gibson on February 20, 2008 as follows.

> The grievant alleges retaliation by Mr. Fisher, procedural error, racial profiling and sexual harassment by Mr. Verneau.
>
> This grievance was investigated by the DSCS and found that the grievant was sanctioned by the Hearing Examiner for engaging in unauthorized group activity and possession of contraband and received DC time for same.  The grievant's allegation of retaliation stems from this charge.  The grievant believes that a Corrections Officer needs to be present for strip searches in the Dietary Department and the charge of

procedural error grew out of this belief. As a result of
the grievant's multiple strip searches, he believes that
staff in Dietary, inclusive of Mr. Verneau, is getting
some sort of sexual pleasure from these searches.

The investigation included other interviews and the
results of which have been considered in this
grievance.  Mr. Fisher learned that the grievant was
engaging in unauthorized group activity. He reported
this to the Security Office and through a cell search,
related contraband was found in the grievant's
possession.  The grievant believes that a Corrections
Officer and/or a Commissioned Officer are required
to be present to conduct strip searches in Dietary.
Dietary staff receives the same training as Corrections
Officers and can conduct strip searches without the
presence of a CO or a Commissioned Officer.  This
investigator, through interview, could not substantiate
the charge of racial profiling for strip searches or the
charge of sexual harassment.  As a result of increased
stealing from the Dietary Department, strip searches
had increased.

As a result of this investigation, none of the grievant's
claims could be substantiated.    Therefore this
grievance is considered appropriated [sic] addressed
and is denied.

Doc. No. 25-1, p. 16.

Plaintiff did not appeal either of his grievances to the Superintendent.  He states that

he was unable to appeal because he did not have his inmate handbook and was not given access to

one while he was in restricted housing.

C. Failure to Have Exhausted Administrative Remedies

Defendants' first basis for dismissal is Plaintiff's alleged failure to have exhausted

available administrative remedies as required by the Prison Litigation Reform Act (PLRA), Pub. L.

No. 104-134, 110 Stat. 1321 (1996).  In this regard, in the PLRA, Congress amended the Civil

Rights of Institutionalized Persons Act, 42 U.S.C.A. § 1997e, concerning suits by prisoners.  Before

the amendments, prisoners challenging the conditions of their confinement under 42 U.S.C. § 1983

were not required to exhaust administrative remedies before filing suit.  The PLRA amended section

1997e(a), as follows, making exhaustion a mandatory requirement.

> (a)     Applicability of administrative remedies
>
>> No action shall be brought with respect to prison
>> conditions under section 1983 of this title, or any
>> other Federal law, by a prisoner confined in any jail,
>> prison, or other correctional facility until such
>> administrative remedies as   are   available   are
>> exhausted.

42 U.S.C. § 1997e(a), as amended.

The United States Court of Appeals for the Third Circuit analyzed the applicability

of the exhaustion requirement in 42 U.S.C. § 1997e in Nyhuis v. Reno, 204 F.3d 65 (3d Cir. 2000)

(Bivens action brought by a federal inmate) and Booth v. Churner, 206 F.3d 289 (3d Cir. 2000) (civil

rights action brought by a state prisoner).  In each of these cases, the Court of Appeals announced

a bright line rule that inmate-plaintiffs must exhaust all available administrative remedies before

they can file an action in federal court concerning prison conditions.  In so holding, the court

specifically rejected the notion that there is ever a futility exception to section 1997e(a)'s mandatory

exhaustion requirement.  Booth, 206 F.3d at 300; Nyhuis, 204 F.3d at 66.  A unanimous Supreme

Court affirmed the Court of Appeals' holding in Booth v. Churner, 532 U.S. 731 (2001) where the

Court confirmed that in the PLRA Congress mandated complete exhaustion of administrative

remedies, regardless of the relief offered through those administrative procedures.  In addition, in

Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court clarified that the PLRA's exhaustion

requirement applies to all inmate suits concerning prison life, whether they involve general circumstances or specific episodes and whether they allege excessive force or other conduct.

      Here, Plaintiff did not appeal either of his grievances to the Superintendent. He states that he was unable to appeal because he did not have his inmate handbook and was not given access to one while he was in restricted housing. Dismissal of this action is appropriate because Plaintiff's allegations fail to state a claim upon which relief can be granted under 42 U.S.C. § 1983. Thus, the court may dismiss the claims without first requiring the exhaustion of administrative remedies as provided for under 42 U.S.C. § 1997e(c)(2).

### D. Liability under 42 U.S.C. § 1983

      Plaintiff's Complaint seeks to assert liability against Defendants pursuant to 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege:  1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

      To establish personal liability against a defendant in a section 1983 action, that defendant must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976). Accordingly, individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Personal involvement by a defendant can

be shown by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions.  Rode, 845 F.2d at 1207.

The mere hypothesis that an official is personally involved in complained of conduct "simply because of his [supervisory] position" is an insufficient basis for finding Section 1983 liability.  Evancho v. Fisher, 423 F.3d 347, 354 (3d Cir. 2005) (allegations of personal liability on the part of the state Attorney General were insufficient where plaintiff did not specifically allege that the A.G. ordered the acts of his "underlings," or had acquiesced to those acts with contemporaneous knowledge of them).  To impose liability on a supervisory official there must be "both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's assertion could be found to have communicated a message of approval to the offending subordinate." Colburn v. Upper Darby Township, 838 F.2d 663, 673 (3d Cir. 1988), *cert. denied*, 489 U.S. 1065 (1989) (emphasis added).

Moreover, supervisory liability still requires an underlying constitutional violation. City of Los Angeles v. Heller, 475 U.S. 769, 799 (1986); Camp v. Brennan, 54 Fed. App'x 78, 81-82 (3d Cir. 2002).   The discussion below shows that Plaintiff's allegations do not show a constitutional violation.

## E. First Amendment

Plaintiff claims that Defendant Fisher retaliated against him for complaining about the strip searches and for filing a grievance against him by issuing him Misconduct Report No. A860782.  This claim invokes the protections of the First Amendment.  In this regard, it is well settled that retaliation for the exercise of a constitutionally protected right is itself a violation of rights secured by the Constitution, which is actionable under section 1983.  Rauser v. Horn, 241 F.3d

8

330 (3d Cir. 2001); White v. Napoleon, 897 F.2d 103, 112 (3d Cir. 1990).  However, merely alleging the fact of retaliation is insufficient; in order to prevail on a retaliation claim, a plaintiff must show three things:  (1) the conduct which led to the alleged retaliation was constitutionally protected; (2) that he was subjected to adverse actions by a state actor (here, the prison officials); and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action.  *See* Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Anderson v. Davila, 125 F.3d 148, 163 (3d Cir. 1997).

If the plaintiff proves these three elements, the burden shifts to the state actor to prove that it would have taken the same action without the unconstitutional factors.  Mt. Healthy, 429 U.S. at 287.  "This means that, once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."  Rauser, 241 F.3d at 334.  Because retaliation claims can be easily fabricated, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner.  *See* Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

A prisoner's ability to file grievances and lawsuits against prison officials is a protected activity for purposes of a retaliation claim.  *See* Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981) (retaliation for exercising right to petition for redress of grievances states a cause of action for damages arising under the constitution); Woods, 60 F.3d at 1165 (prison officials may not

retaliate against an inmate for complaining about a guard's misconduct).  Plaintiff claims that the retaliation was the result of his complaints and for filing a grievance.  Thus, he had alleged the first element of a retaliation claim.

With respect to the second element, Plaintiff alleges that he was subject to a misconduct for which he received 60-days disciplinary time.  This Court may conclude that he has alleged the second element of a retaliation claim, *i.e.*, that he was subjected to "adverse" action.  *See* Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2002) (holding that prisoner's allegation that he was falsely charged with misconduct in retaliation for filing complaints against a correctional officer sufficiently alleged a retaliation claim); Allah, 229 F.3d at 225 (holding that an allegation that a prisoner was kept in administrative segregation to punish him for filing civil rights complaints stated a retaliation claim).

It is the third element that limits Plaintiff's recovery, *i.e.*, that the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action.  With respect to his allegations that the Defendants issued a false misconduct report, the filing of a prison disciplinary report is not actionable under 42 U.S.C. § 1983 as prohibited "retaliation" unless the report is, in fact, false.  In other words, the finding of guilt of the underlying misconduct charge satisfies a defendant's burden of showing that he would have brought the misconduct charge even if plaintiff had not filed a grievance.  *See* Harris-Debardelaben v. Johnson, 121 F.3d 708, 1997 WL 434357, at *1 (6th Cir. July 31, 1997); Hynes v. Squillace, 143 F.3d 653, 657 (2d Cir.), *cert. denied*, 119 S.Ct. 246 (1998); Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994) (a finding of guilty of a prison rule violation based on some evidence "essentially checkmates [the] retaliation claim."), *cert. denied*, 115 S.Ct. 2584 (1995).  *See also* Carter v. McGrady, 292 F.3d 152 (3d Cir. 2002)

(noting that even if prison officials were motivated by animus to jailhouse lawyers, there was sufficient evidence of the plaintiff's misconduct offenses to conclude that the misconducts would have issued notwithstanding his jailhouse lawyering); Allah v. Al-Hafeez, 208 F. Supp. 2d 520 (E.D. Pa. 2002).

Here, Plaintiff was found guilty of the misconduct and received 60 days disciplinary custody based on the hearing examiner's review of the evidence. This constitutes "some evidence" sufficient to support a prison disciplinary conviction. *See* Superintendent v. Hill, 472 U.S. 445, 455-56 (1985). Consequently, Plaintiff's retaliation claim should be dismissed.

### F. Fourth Amendment

Next, Plaintiff seeks to impose liability under the Fourth Amendment, which provides as follows.

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

The Fourth Amendment's proscription against unreasonable searches does not apply to a prisoner's cell or to prisoner's property. *See* Hudson v. Palmer, 468 U.S. 517, 526 (1984) (holding that an inmate has no reasonable expectation of privacy in his prison cell entitling him to the protections of the Fourth Amendment). Moreover, inmates retain only a "limited right to bodily privacy" under the Fourth Amendment. Covino v. Patrissi, 967 F.2d 73, 78 (2d Cir.1992). Inmates do not have a Fourth Amendment right to be free of strip searches, which can be conducted by officials without probable cause provided that the search is conducted in a reasonable manner. Bell

v. Wolfish, 441 U.S. 520 (1979); Ostrander v. Horn, 145 F.Supp.2d 614, 620 (M.D.Pa.2001). The reasonableness of a search in each case "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." Bell, 441 U.S. at 559. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. *Id.*

With respect to the instant action, any inconvenience caused to Plaintiff by the increased searches of kitchen workers was offset by the need of prison officials to ensure against theft and to secure the safety and security of the institution. As such, Defendants' Motion to Dismiss should be granted with respect to Plaintiff's Fourth Amendment claim. *Accord* Ostrander v. Horn, 145 F.Supp.2d 614, 620 (M. D. Pa. 2001); Wilson v. Shannon, 982 F.Supp. 337, 339 (E. D. Pa.1997) (holding that repeated strip searches of prisoner did not violate Fourth Amendment as prisoner failed to show that they were conducted in unreasonable manner, even if they were unnecessary); Collins v. Derose, Civ. No. 08-0744, 2009 WL 812008, at *5 (M. D. Pa. March 26, 2009).[1]

### G. Eighth Amendment

Plaintiff  also asserts liability under the Eighth Amendment, which provides as follows.

---

1. *Cf.* Perez v. Hewitt, Civ. No. 04-10112, 2008 WL 780628, 3 (S.D.N.Y. March 24, 2008) (quoting Hudson, 468 U.S. at 530) ("Our holding that respondent does not have a reasonable expectation of privacy enabling him to invoke the protections of the Fourth Amendment does not mean that he is without a remedy.... The Eighth Amendment always stands as a protection against cruel and unusual punishments."); Peckham v. Wisconsin Dept. of Corrections, 141 F.3d 694, 699 (7th Cir. 1998) (J. Easterbrook concurring) ("What Hudson and Johnson hold is that convicts lack any reasonable expectation of privacy that may be asserted against their custodians and that searches of cells and other places where contraband may be hidden, including the space under one's clothing, need not be justified by any particular quantum of suspicion. That principle should not be impugned.").

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The Eighth Amendment protects individuals against the infliction of "cruel and unusual punishments."  This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement.  In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).

Notwithstanding, not every injury raises constitutional concerns.  A prison official violates the Eighth Amendment only when two requirements are met.  The inmate must show that: 1) he suffered a risk of "serious" harm; and 2) prison officials showed "deliberate indifference" to such risk.  Farmer, 511 U.S. at 834.  The first element is satisfied when the alleged "punishment" is "objectively sufficiently serious." Id.  In determining whether a prisoner has alleged a risk that is  objectively serious, a court must consider not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency.  In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.  Helling v. McKinney, 509 U.S. 25, 35 (1993).

The second criterion, deliberate indifference, requires an inmate to show that the prison official had a sufficiently culpable state of mind.  The Supreme Court clarified this deliberate indifference standard in Farmer as follows.

13

> We reject petitioner's invitation to adopt an objective test for deliberate indifference.  We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement <u>unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference</u>.  This approach comports best with the text of the Amendment as our cases have interpreted it.  The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments."  An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. . . .  But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

<u>Farmer</u>, 511 U.S. at 837-838 (emphasis added).

Plaintiff's allegations do not show that he was deprived of any basic human need such as food, clothing, shelter, sanitation, medical care or personal safety.  Nor do they show that any defendant acted, if at all, with deliberate indifference.  Plaintiff is a kitchen worker.  As such, he must endure frequent searches due to the high risk of theft arising from his job.  The Constitution does not mandate comfortable prisons.  <u>Rhodes</u>, 452 U.S. at 349.  Prisons housing "persons convicted of serious crimes cannot be free of discomfort." <u>Id</u>.  Plaintiff's allegations concerning searches, construed in the broadest possible sense, do not rise to the level of a Eighth Amendment violation.  *See* <u>Brown v. Blaine</u>, 185 Fed. App'x 166 (3d Cir. 2006) (collecting cases).

In addition, to the extent that Plaintiff is raising an Eighth Amendment claim regarding his confinement in AC, the Pennsylvania courts unanimously have held that confinement

in restrictive housing conditions, without more, does not violate the Eighth Amendment. *See, e.g.*,

Griffin v. Vaughn, 112 F.3d. 703 (3d Cir. 1997) (holding that the restrictive conditions in

administrative custody in the Pennsylvania state correctional institutions, in and of themselves, do

not violate the Eighth Amendment); Fortson v. Kelchner, 2009 WL 693247, At *3 (W.D. Pa. Mar.

13, 2009) (granting Defendants' Motion to Dismiss as to Plaintiff's Eighth Amendment claim

regarding confinement in the RHU and SMU); Dantzler v. Beard, 2007 WL 5018184, at *11-12

(W.D. Pa. Dec. 6, 2007) (holding that the conditions of confinement in the SMU and LTSU did not

amount to cruel and unusual punishment in violation of the Eighth Amendment); Woods v. Abrams,

2007 WL 2852525, 14 (W.D. Pa. Sep. 27, 2007) (holding that the conditions of confinement in the

LTSU did not satisfy the objective component of an Eighth Amendment claim); Banks v. Beard,

2006 WL 2192015, at *11 (W.D.Pa. Aug. 1, 2006) (same); Rivera v. Pennsylvania Dept. of

Corrections, 837 A.2d 525, 530-532 (Pa. Super. 2003) (same).

   Consequently, Defendant's Motion to Dismiss should be granted as to Plaintiff's

Eighth Amendment claims. *Accord* Milhouse v. Arbasak, Civ. No.07-01442, 2009 WL 1119488,

3 (E. D. Pa. April 27, 2009) (holding that mere placement in SHU and requirement of routine strip

searches do not violate the Eighth Amendment).

H. Fourteenth Amendment

   Plaintiff's final claims arise under the Fourteenth Amendment, which provides as

follows.

> Section 1.  All persons born or naturalized in the
> United States, and subject to the jurisdiction thereof,
> are citizens of the United States and the State wherein
> they reside.  No State shall make or enforce any law
> which shall abridge the privileges or immunities of
> citizens of the United States; nor shall any State

> deprive any person of life, liberty, or property,
> without due process of law; nor deny to any person
> within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, §1 (emphasis added).

     1.    <u>Due Process</u>

Three kinds of section 1983 claims may be brought against the State under the Due Process Clause of the Fourteenth Amendment. <u>Zinermon v. Burch</u>, 494 U.S. 113, 125 (1990). First, a plaintiff may bring suit under section 1983 for a violation of his specific rights as guaranteed by the Bill of Rights. *Id.* Second, a plaintiff may assert a Fourteenth Amendment claim under the "procedural" aspect of the Due Process Clause, which guarantees fair procedure for the deprivation of a constitutionally-protected interest in life, liberty or property. *Id.* Third, a plaintiff may assert a claim under the "substantive" prong of the Due Process Clause, which bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them. *Id.* (quoting <u>Daniels v. Williams</u>, 474 U.S. at 331)).

Under the first type of action, the discussion above reveals that Plaintiff has failed to state a claim upon which relief may be granted with respect to his specific rights as guaranteed in the Bill of Rights by the First, Fourth, and Eighth Amendments.

With respect to the procedural prong, the Due Process Clause of the Fourteenth Amendment does not protect every change in the conditions of confinement having a substantial adverse impact on a prisoner. <u>Meachum v. Fano</u>, 427 U.S. 215, 224 (1976). The Due Process Clause shields from arbitrary or capricious deprivation only those facets of a convicted criminal's existence that qualify as "liberty interests." <u>Hewitt v. Helms</u>, 459 U.S. 460 (1983); <u>Morrissey v. Brewer</u>, 408 U.S. 471 (1972). The types of protected liberty interests are not unlimited. The interest

must rise to more than an abstract need or desire and must be based on more than a unilateral hope. Rather, an individual claiming a protected interest must have a legitimate claim of entitlement to it. Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979) (citation omitted).

Thus, the threshold question presented by Plaintiff's due process claims is whether Defendants' actions impacted a constitutionally-protected liberty interest.  A liberty interest may arise either from the Due Process Clause itself, or from a statute, rule, or regulation.  Hewitt, 459 U.S. at 466.  A liberty interest inherent in the Constitution arises when a prisoner has acquired a substantial, although conditional, freedom such that the loss of liberty entailed by its revocation is a serious deprivation requiring that the prisoner be accorded due process.  Gagnon v. Scarpelli, 411 U.S. 778, 781 (1973).  Interests recognized by the Supreme Court that fall within this category include the revocation of parole, Morrissey, 408 U.S. at 471, and the revocation of probation, Gagnon, 411 U.S. at 778.  The Due Process Clause, however, does not create an inherent liberty interest to remain free from administrative segregation.  *See, e.g.*, Hewitt, 459 U.S. at 468; Wolff, 418 U.S. at 556; Montayne v. Haymes, 427 U.S. 236, 242 (1976); Sheehan v. Beyer, 51 F.3d 1170, 1175 (3d Cir. 1995); Layton v. Beyer, 953 F.2d 839, 845 (3d Cir. 1992).  Accordingly, Plaintiff can succeed under the Due Process Clause only if state law or regulation has created a constitutionally-protected liberty interest in remaining free from administrative detention.

In Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court pronounced a new standard for determining whether prison conditions deprive a prisoner of a liberty interest that is protected by due process guarantees.  Specifically, the Supreme Court held that prison conditions do not impact a protectable liberty interest unless they result in an "atypical and significant hardship

on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 483 (emphasis

added).  Applying this test, the Supreme Court concluded that the prisoner in Sandin did not have

a protected liberty interest in remaining free of disciplinary detention or segregation because his

thirty-day disciplinary detention, though punitive, did not present a dramatic departure from the

basic conditions of his sentence.  In making this determination, the Supreme Court looked at two

basic factors:  1) the amount of time the prisoner was placed into disciplinary segregation; and 2)

whether the conditions of his confinement in disciplinary segregation were significantly more

restrictive. After reviewing these two factors, the Court concluded that thirty days in disciplinary

detention, which was similar in many respects to administrative custody, did not present the type

of atypical, significant deprivation in which a state might conceivably create a liberty interest.

   First, it must be noted that a prisoner does not have a constitutional right to be free

from being falsely or wrongly accused of conduct that may result in the deprivation of a protected

liberty interest.  Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986), *cert. denied*, 485 U.S. 982

(1988).  In other words, the mere filing of false charges against an inmate does not constitute a *per

se* constitutional violation.  *Id.*  Before the Supreme Court handed down its opinion in Sandin, the

federal courts had determined that the filing of unfounded administrative charges against an inmate

may result in a procedural due process violation only when such charges were not subsequently

reviewed in a hearing.  *Id.* at 952 (an allegation that a prison guard planted false evidence fails to

state a claim where the procedural due process protections as required in Wolff v. McDonnell are

provided) (citation omitted).  Thus, even if false charges impaired a protected liberty interest, as long

as prison officials granted the inmate a hearing and an opportunity to be heard, the filing of

unfounded charges did not give rise to a procedural due process violation actionable under section

1983.  *Accord* Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002); Jones v. Coughlin, 45 F.3d 677 (2d Cir. 1995); Franco v. Kelly, 854 F.2d 584, 587 (2d Cir. 1988); McClean v. Seclor, 876 F. Supp. 695 (E.D. Pa. 1995).

In light of the Supreme Court's ruling in Sandin, however, Plaintiff has not even demonstrated that he had a constitutionally protected liberty interest that was offended by Defendants' actions in allegedly issuing a false report.  Specifically, in deciding whether a protected liberty interest exists under Sandin, a federal court must consider the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions.  Mitchell v. Horn, 318 F.3d 523, 532 (3d Cir. 2003) (citing Shoats v. Horn, 213 F.3d 140, 144 (3d Cir. 2000)).  In this case, Plaintiff alleges that, as a result of the misconduct, he received sixty days of DC.  Recently, the Court of Appeals for the Third Circuit  held that an inmate sentenced to an aggregate of 930 days in disciplinary confinement did not constitute an atypical and significant hardship sufficient to trigger a liberty interest under Sandin.  *See* Young v. Beard, 227 Fed. Appx. 138, 2007 WL 824172 (3d Cir. 2007).  Thus, it is unlikely that the filing of false charges, even in the absence of a hearing, would state a constitutional claim on the facts before this Court.  *See* Strong v. Ford, 108 F.3d 1386 (Unpublished Opinion), 1997 WL 120757 (9th Cir. 1997) (the alleged making of a false charge, however reprehensible or violative of state law or regulation, does not constitute deprivation of a federal right protected by 42 U.S.C. § 1983 when it does not result in the imposition of an atypical hardship on the inmate in relation to the ordinary incidents of prison life).

Plaintiff was on notice of the charges against him and had an opportunity to contest them at the hearing.  *See* Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir.2002) ("[S]o long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports,

without more, are not enough to state a due process claim.").   Consequently, Defendants' Motion to Dismiss should be granted as to this claim.

Finally, the substantive prong of the due process clause protects individuals from the arbitrary exercise of the powers of government.  Daniels v. Williams, 474 U.S. 327, 329-33 (1986). While the procedural aspect of the Due Process Clause requires the government to follow appropriate procedures to promote fairness in governmental decisions, the substantive aspect of the Clause bars certain government actions regardless of the fairness of the procedures used to implement them so as to prevent governmental power from being used for purposes of oppression. Id. (citations omitted.) See also Block v. Potter, 631 F.2d 233, 236 (3rd Cir. 1980) (a governmental decision may not be made in an "arbitrary or constitutionally impermissible" fashion).

The substantive component of the Due Process Clause may be violated by governmental employees when their conduct amounts to an abuse of official power that "shocks the conscience." Fagan v. City of Vineland, 22 F.3d 1296, 1303 (3d Cir. 1994).  With respect to prisoner claims, "it can fairly be said that the judicial conscience is shocked by a governmental employee's reckless disregard of the constitutional rights of a person in custody," because "the government has restricted an individual's liberty and thereby increased his or her vulnerability to abusive governmental action or to private harm." Fagan, 22 F.3d at 1306.  A violation of substantive due process rights is cognizable under 42 U.S.C. § 1983. See, e.g., Foucha v. Louisiana, 504 U.S. 71, 80 (1992); Collins v. City of Harker Heights, 503 U.S. 115 (1992); Regents of the University of Michigan v. Ewing, 474 U.S. 214, 225 (1985).

While Plaintiff's claim liberally may be interpreted as asserting a violation of substantive due process, it can hardly be said that increased searches of inmate kitchen workers is

an arbitrary abuse of official power that shocks the conscience.  Consequently, such claim should be dismissed.

      2.    <u>Equal Protection</u>

      Plaintiff also seems to be raising an equal protection claim through his allegations that black prisoners are searched more often.  The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. The Equal Protection Clause announces the "fundamental principle" that "the State must govern impartially," <u>New York City Transit Auth. v. Beazer</u>, 440 U.S. 568, 587 (1979), and "is essentially a direction that all persons similarly situated should be treated alike." <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985).

      Plaintiff has failed to allege any facts from which it can be concluded that Defendants engaged in intentional or purposeful discrimination or that he was treated differently than similarly situated individuals on the basis of his race, religion, gender, alienage, or national origin. Additionally, Plaintiff has not stated any specific acts taken by Defendants to show any discriminatory animus attributable to the stated Defendants.  Thus, Plaintiff's equal protection claim should be dismissed.

      I. <u>Conspiracy</u>

      As a final matter, this court notes that Plaintiff has attempted to assert liability against Defendants based on his allegation that they were engaged in some sort of conspiracy.  In order to demonstrate a conspiracy, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of state law.'" <u>Parkway</u>

Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 700 (3d Cir. 1993) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970)).  A plaintiff must allege conspiracy with particularity even though a heightened pleading standard generally does not apply to civil rights actions against individual defendants.  Bieros v. Nicola, 860 F. Supp. 223, 225 (E.D. Pa. 1994) (citing Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993)).  A complaint alleging a conspiracy must make "factual allegations of combination, agreement, or understanding among all or between any of the defendants [or coconspirators] to plot, plan, or conspire to carry out the alleged chain of events."  Spencer v. Steinman, 968 F. Supp. 1011, 1020 (E.D. Pa. 1997).  *See also* Loftus v. Southeastern Pa. Transp. Auth., 843 F. Supp. 981, 987 (E.D. Pa. 1994) ("While the pleading standard under [Fed.R.Civ.Proc.] Rule 8 is a liberal one, mere incantation of the words 'conspiracy' or 'acted in concert' does not talismanically satisfy the Rule's requirements").

In the instant action, Plaintiff has failed to allege any facts showing an agreement or plan formulated and executed by any of the Defendants to achieve a conspiracy.  Absent allegations showing any agreement to deny Plaintiff's rights, Plaintiff's bald allegations of conspiracy are insufficient to state a claim upon which relief can be granted.  *See, e.g.*, Swanson v. Miller, 55 Fed. App'x 871 (10th Cir. 2003 (upholding dismissal of plaintiff's conclusory allegations of conspiracy as insufficient to state a claim for relief); Tahfs v. Proctor, 316 F.3d 584 (6th Cir. 2003).  Consequently, Plaintiff's claims of conspiracy also should be dismissed.

## III.       CONCLUSION

For the reasons set forth above, it is respectfully recommended that the Motion to Dismiss filed by the Commonwealth Defendants (doc. no. 25) be granted and that the Motion to Dismiss filed by Defendant Fisher (doc. no. 45) be granted.

In accordance with the applicable provisions of the Magistrate Judges Act [28 U.S.C. § 636(b)(1)(B) & (C)] and Rule 72.D.2 of the Local Rules of Court, the parties shall have fourteen days from the date of the service of this report and recommendation to file written objections thereto. Any party opposing such objections shall have fourteen days from the date on which the objections are served to file its response. A party's failure to file timely objections may constitute a waiver of that party's appellate rights.

Dated: April 12, 2010

Lisa Pupo Lenihan
U.S. Magistrate Judge

cc:   Joseph Watson
      EF - 9383
      S.C.I. Somerset
      1600 Walters Mill Road
      Somerset, PA  15510